**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JOHN C MANIGAULTE, *et al.*,
*Plaintiff*,

v.

EVERSOURCE ENERGY, *et al.*,
*Defendant*.

Case No. 3:23-CV-536 (OAW)

# ORDER

This action is before the court upon Defendants' Motions to Dismiss ("Motions"), ECF Nos. 77–78, and Plaintiffs' Motion for Preliminary Injunction and Declaratory Judgments, ECF No. 102. The court has reviewed the Motions, Plaintiffs' opposition, ECF Nos. 83–84, Defendants' reply brief, ECF Nos. 87–88, and the record in this matter, and is thoroughly advised in the premises. The court has also reviewed Plaintiffs' Motion for Preliminary Injunction, ECF No. 102, Defendants' objections, ECF Nos. 103–04, and Plaintiffs' replies, ECF No. 105–06. For the foregoing reasons, the Motions hereby are **GRANTED** and Plaintiffs' Motion for Preliminary Injunction is **DENIED.**

## I. BACKGROUND[1]

This case arises from disputed electrical bills from November and December 2022. Manigaulte has a speech disability, "difficulties tolerating blood pressure medications," degenerative disc disease, and coronary artery disease, which he alleges are disabilities within the definition set by the Americans with Disabilities Act ("ADA"). ECF No. 69

[1] All factual allegations are taken from the Complaint, ECF No. 69, and are presumed true for the purpose of this ruling.

("Compl.") ¶ 37, 46. David Siudzinski is Manigaulte's "unpaid home health care aid, house mate and obligor" on the utility account. *Id.* ¶ 38.

Plaintiffs received a $229.41 electrical bill from Connecticut Light and Power Company ("CL&P") on November 23, 2022. This was "significantly higher" than Plaintiffs' electric bill when they lived in New York. *Id.* ¶ 39. After receiving electric bills for November and December 2022, Plaintiffs disputed the invoice amounts, as electricity is "not a luxury, it is an *essential service*." *Id.* ¶ 45. Siudzinski contacted CL&P on January 3, 2023, to try to "resolve" the disputed bills because Plaintiffs could not afford the bills and believed they were in error. *Id.* ¶ 46. Siudzinski emailed officials at the Public Utilities Regulatory Authority ("PURA") and "informed them" that Manigaulte was a disabled senior citizen within the meaning of the ADA, and that he would likely suffer medically significant, "if not life-threatening consequences," if his electrical services were terminated. *Id.* ¶ 47.

Siudzinski contacted CL&P again on January 5, 2023, about the disputed invoices, requesting a "reasonable accommodation," which would permit "interactive electronic mail or instant messaging" to communicate about the disputed invoices. A CL&P representative told him that communications regarding billing must be done via telephone. *Id.* ¶ 48. On January 12, 2023, a PURA representative, Rosalind Gwynn, informed Siudzinski that a disability or financial hardship claim must be submitted to CL&P. Gwynn told Plaintiffs to contact CL&P about any financial assistance programs and the Connecticut Department of Social Services for "energy assistance." Gwynn also told Plaintiffs that a meter test could be done by Eversource, and that Plaintiffs could request a PURA engineer to witness the test. *Id.* ¶ 49.

Plaintiffs contacted Gwynn on January 13, 2023, to request a meter test and a witness. *Id.* ¶ 50. On January 14, 2023, Plaintiff sent a letter with $10 to Gwynn, "as a stated requirement to have the meter test witnessed by a PURA engineer." *Id.* ¶ 51. Plaintiffs, who rent their unit, asked the unit's owner to have an electrician inspect their electric service. Electricians found an "8 ampere draw with the breakers in the 'off' position," and stated that the meter servicing Plaintiffs'' residence might be defective. Plaintiffs were advised to "get that meter changed." *Id.* ¶ 52.

CL&P contacted Plaintiffs on January 24, 2023, to arrange a time for "for the meter serving Plaintiffs' residence to be exchanged." *Id.* ¶ 53. Plaintiffs reiterated their request for reasonable accommodation for non-telephonic communication. An Eversource employee provided Plaintiffs with a fax number they could write to. *Id.* Gwynn contacted Plaintiffs on January 23, 2023, regarding getting a witness for the meter test. *Id.* ¶ 54. On January 31, 2023, the meter serving Plaintiffs' residence was removed and exchanged with a digital meter. Plaintiffs were not informed as to why the meter was removed "to be tested in the lab." *Id.* ¶ 55.

Plaintiffs emailed Gwynn on February 1, 2023, explaining that an Eversource employee stopped by their apartment, exchanged the meter, and then used "his hand-held device to determine the meter's ERT reading." The meter had a reading of "08591," but the meter reading on the meter he removed was different. Gwynn never responded to the email. *Id.* ¶ 62. On February 27, 2023, Siudzinski received a text message from CL&P stating that he was required to pay $648.10 by March 12 to avoid the power being disconnected. *Id.* ¶ 63–64. Plaintiffs sent "additional communications" regarding

Manigaulte's disability to CL&P via fax. *Id.* ¶ 65. Plaintiffs also contacted Gwynn to request a meter test on the previously removed meter. *Id.* ¶ 66.

On February 28, 2023, Siudzinski contacted CL&P via telephone to inform them that Plaintiffs had received an energy assistance grant on January 9, 2023, which could be applied to the disputed invoices. *Id.* ¶ 68. A CL&P representative informed Siudzinski that the energy assistance grant funds had not been received; that CL&P had received Plaintiffs' February 27 fax transmissions; and that for Plaintiffs to qualify for medical protection from disconnection, a doctor would need to send a statement or diagnosis of Manigaulte's medical condition or disability. *Id.* ¶ 70. Gwynn then emailed Plaintiffs on March 1, 2023, stating that "Eversource has confirmed that your account was coded financial hardship on February 28, 2023, and you are not in jeopardy of being disconnected." *Id.* ¶ 71.

Another meter test was conducted on March 7, 2023. Plaintiffs and a PURA representative (Steve Capozzi) were present, at a location "owned, operated or controlled by CL&P." *Id.* ¶ 72. Plaintiffs videoed the meter test. Capozzi was "paid" to witness, and "could not possibly validate billing practices." *Id.* ¶ 72. Following the meter test, Plaintiffs received correspondence from PURA and CL&P on March 11 and 12, stating that the meter was found to be "99.55%" accurate. *Id.* ¶ 73.

On April 13, 2023, Plaintiffs attempted to email CL&P concerning their "ongoing hardship" and prior accommodation request for affordable electricity, referencing Manigaulte's disability status. *Id.* ¶ 75. Plaintiffs did not receive a response. *Id.* ¶ 76. Plaintiffs mailed their previous email on April 14, 2023, to CL&P, using certified mail. *Id.* ¶ 77. Plaintiffs called CL&P on April 17, 2023, and spoke to a representative, who stated

that the energy assistance grant still had not been received. *Id.* ¶ 78. Plaintiffs contacted PURA again and asserted that CL&P's failure to "acknowledge, respond to or provide reasonable accommodations," was hindering their ability to resolve the billing dispute. Plaintiffs told PURA that CL&P had told them that Plaintiffs' account could only be protected from termination by "winter protection." *Id.* ¶ 82.

On April 18, 2023, Gwynn responded to Plaintiffs, stating that PURA was expanding the inquiry to include ADA compliance, and noting that they had contacted Eversource on Plaintiffs' behalf. *Id.* ¶ 83. On April 20, 2023, Plaintiffs contacted Gwynn, requesting injunctive relief against CL&P to preclude the termination of Plaintiffs' electric services. *Id.* ¶ 84.

## II. LEGAL STANDARD

To withstand a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement, but the pleading must show, not merely allege, that the pleader is entitled to relief. *Id.* Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"

*Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). However, when reviewing a 12(b)(6) motion to dismiss, the court must draw all reasonable inferences in the non-movant's favor. *Roth v. Jennings*, 489 F.3d 499, 503 (2d Cir. 2007).

## III. DISCUSSION

Plaintiffs assert that PURA, David Sherry, Rosalind Gwynn, Jeffrey Gaudiosi, and Steve Capozzi ("State Defendants") violated Title II of the ADA, 16 U.S.C. § 2625(g), 42 U.S.C. § 1983, the Fourteenth Amendment, and several state laws and regulations. Compl. at 26–30. Plaintiffs assert that CL&P and Eversource Energy ("ES Defendants") violated Title III of the ADA, 16 U.S.C. § 2625(g), and the Connecticut Unfair Trade Practices Act ("CUTPA"). *Id.* at 27–28, 31–33. State Defendants argue that many claims are barred by the Eleventh Amendment; that Title II of the ADA does not abrogate state immunity; that Plaintiff fails to state a claim under the ADA; that the court lacks jurisdiction to address Plaintiffs' claims under 16 U.S.C. § 2625; that they are entitled to qualified immunity; and, in the alternative, that the court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. ECF No. 78. ES Defendants argue that they are not state actors; that Plaintiffs do not have a cause of action under 16 U.S.C. § 2625; that Plaintiffs lack standing under the ADA; and that the court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. ECF No. 77.

Because Plaintiffs—who are counseled, *see* ECF Nos. 55–56—failed to meaningfully address the arguments in Defendants' motions to dismiss, the court could grant Defendants' motions to dismiss for that reason alone. However, even if Plaintiffs

had provided meaningful arguments in opposition, the claims would be dismissed for the reasons stated in Defendants' motions to dismiss. The court addresses each claim seriatim. As all claims are dismissed, the court dismisses Plaintiffs' motion for preliminary injunction, *see* ECF No. 102, as moot. *See Miller v. McDonald*, 180 F.4th 420, 426 n.10 (2d Cir. 2026) (noting that after dismissing all claims, the district court denied plaintiffs' motion for a preliminary injunction as moot).

**A. <u>Plaintiffs' Response</u>**

"Courts in this Circuit have presumed that plaintiffs have abandoned their claims when they do not oppose a motion to dismiss them." *Thurmand v. Univ. of Conn.*, No. 18-cv-1140 (JCH), 2019 WL 369279, at *3 (D. Conn. Jan. 30, 2019); *Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313, 328 (S.D.N.Y. 2018) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim.") (quoting *Johnson v. City of N.Y.*, No. 15-cv-8195, 2017 WL 2312924, at *18 (S.D.N.Y. May 26, 2017). "At the motion to dismiss stage, . . . a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim." *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-cv-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014); *Lunsford v. Farrell Shipping Lines, Inc.*, No. 83-cv-7462, 1991 WL 150596, at *10 (S.D.N.Y. July 26, 1991) (dismissing complaint, as "plaintiffs have failed to come forth with any support for their claims," and citing "unsupported statement[s] by plaintiffs").

Plaintiffs fail to meaningfully oppose State Defendant's motion to dismiss. Instead, Plaintiff chooses to spend significant time making rather concerning accusations against defense counsel. Plaintiffs' response invokes Nazi Germany, Adolf Hitler and members of his government, slavery, and white supremacy. ECF No. 83 at 2 (comparing

Defendants' argument as a "blitzkrieg"); *id.* at 3 ("blitzkrieg" reference); *id.* at 10 & n.15 (referencing Hitler's Minster of Justice Gürtner); *id.* at 21 (Nazi Germany); *id.* at 23 (white supremacy); *id.* at 26–27 & n.40 (accusing "Defense Counsel" of asking the Court "to travel back to the County Court of Berlin in November of 1938"; referencing Third Reich, Auschwitz, and discrimination against Jewish people); *id.* at 28 (referencing Goering and "clear Nazi policy," Hitler and "the Rhineland sterilizations," and comparing Defense Counsel's argument to the "creepy cogitations of the German medical economist Dr. O. Steeche"); *id.* at 34 (slavery); *id.* at 35 (Josef Mengele); ECF No. 84 at at 3 (slavery); *id.* at 12 (referencing "slaves" and "Germany's heinous history"; accusing defense counsel of "neither respect[ing] nor honor[ing] the history of Plaintiffs' kinsfolk, nor does it respect the sacrifices of American revolutionists").

Plaintiffs do not cite case law supporting their assertion that Manigaulte is a qualified individual under the ADA or otherwise provide meaningful arguments countering Defendants' arguments. ECF No. 83 at 27–30 (citing congressional debates surrounding the passage of the ADA but not citing cases establishing the necessary elements of an ADA claim); ECF No. 84 at 9 (noting that "both Plaintiffs are declaring disability within the meaning of the ADA") (citation modified); *id.* at 31 (referencing Martin Luther King; relying on "several scholarly publications by medical doctors," but not citing cases establishing the necessary elements of an ADA claim).

Plaintiffs do not counter ES Defendants' assertion that they lack standing, beyond the general assertion that because "electric energy is a form of property, the unlawful deprivation of electric energy constitutes deprivation of a property interest needed to secure the health and well-being of indigents or disabled indigents," they suffered an

injury in fact. ECF No. 83 at 37–38 (going on to cite the Ninth Amendment and a letter from George Washington to his Mt. Vernon estate as support).

Plaintiffs mention § 2625(g) three times in their entire 107-page filing against ES Defendants—once on the first page, where they state, without support, that 16 U.S.C. § 2625 provides a cause of action, *see* ECF No. 84 at 1, and two more times to claim that § 2625(g)(2)(A) "obtains both statutory and constitutional footing on the solid legal ground of natural rights eloquently contemplated by John Locke," and to note that termination "shall take into account the need to include reasonable provisions for elderly and handicapped consumers," *id.* at 3, n.5. Plaintiffs mention § 2625(g)(2)(A) once in their 96-page filing against State Defendants in their discussion of the Privileges or Immunities Clause of the Fourteenth Amendment. ECF No. 83 at 23–24.

Plaintiffs assert, without citing a single case directly supporting their assertion, that ES Defendants are state actors because the State of Connecticut granted a private entity "the right to deprive consumers of a health-preserving and life-preserving property which is not available outside of state action regulating such a product or service." *Id.* at 5 (no citations); *id.* at 11 (citing to a law review article and the Civil Rights Act of 1875), *id.* at 15 (citing to a law review article), *id.* at 18, n.35 (citing to *Georgia v. Brailsford*, 3 U.S. 1 (1794)—which dealt with who an individual's debt was owed too—and Thomas Jefferson's first inaugural address), *id.* at 19–23 (citing to a law review article and identifying former Connecticut State employees who now work for Eversource as proof of a "complex web[] of corruption between the state, the electric company, and the holding company"); *id.* at 24–25 (citing to *Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961)—which dealt with race-based discrimination—to support Plaintiffs' assertion that

the State of Connecticut "profits from 'private' discrimination that unjustly enriches ES via biased negotiations that disfavor *all* ratepayers"); *id.* at 28 (citing *Peterson v. City of Greenville*, 373 U.S. 244 (1963)—which concerned a segregated restaurant—to support Plaintiffs' assertion that the "fact that ES exercises state-sanctioned 'police powers' (to lawfully disconnect electric power) makes it a 'state actor'").

Plaintiffs provide no meaningful argument in opposition to State Defendants' argument that the Fourteenth Amendment claim fails. Instead, they just reference "white supremacy," *see* ECF No. 83 at 12; slavery, *Plessy v. Ferguson*, 163 U.S. 537 (1896), and *Dred Scott v. Sandford*, 60 U.S. 393 (1856), *id.* at 13; the Privileges or Immunities clause and "white supremacy," *id.* at 20–23; unjust enrichment, *id.* at 26; and "the County Court of Berlin in November of 1938" and discrimination against Jewish people, *id.* at 27; when discussing the Fourteenth Amendment generally.

Plaintiffs also do not provide any meaningful argument against State Defendants' assertion that the Eleventh Amendment bars Plaintiff's 42 U.S.C. § 1983 claims. Rather, they just generally assert that the Eleventh Amendment does not state that "citizens cannot sue their own state in federal court for violating the rule of law," and that "[t]wenty-first-century physics bears witness to the argument that indigents possess a fundamental right to electric power," and citing Albert Einstein's $E=mc^2$ equation. *Id*. at 36.

Plaintiffs' failure to provide any meaningful argument in opposition is reason enough to grant Defendants' motion to dismiss. *Lunsford*, 1991 WL 150596, at *10 (dismissing complaint, as "plaintiffs have failed to come forth with any support for their claims," and citing "unsupported statement[s] by plaintiffs"). However, even if Plaintiffs

had provided a meaningful argument in opposition, they would be dismissed for the reasons stated in Defendants' motions to dismiss.

**B. <u>ADA Claims</u>**

**1. <u>State Defendants</u>**

Plaintiffs brought claims under Title II of the ADA against the State Defendants in their official and individual capacity.

Initially, the court notes that a "plaintiff may not bring an ADA claim against a state actor in his or her individual capacity." *Sakon v. Connecticut*, No. 22-cv-897 (AWT), 2025 WL 896832, at *7 (D. Conn. Mar. 24, 2025); *see also Amato v. McGinty*, No. 1:21-cv-860, 2022 WL 226798, at *9–10 (N.D.N.Y. Jan. 26, 2022) ("there is no individual liability under Title II of the ADA"). Accordingly, Plaintiffs' ADA claims against the State Defendants in their individual capacity must be dismissed.

Plaintiffs' official capacity claims against the State Defendants under the ADA must be dismissed as well. Even presuming that Siudzinski has standing to assert an ADA claim based on alleged injuries to Manigaulte, and that Plaintiffs established the necessary elements for an ADA claim, PURA does not "face liability under Title II of the ADA on account of its role as a regulator of CL&P." *Fore v. Conn. Light & Power*, No. 3:13-cv-822 (JAM), 2015 WL 5722719, at *5 (D. Conn. Sep. 29, 2015) (citing *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63 (2d Cir. 2012)). Accordingly, State Defendants' motion to dismiss is granted as to this claim.

**2. <u>ES Defendants</u>**

Plaintiffs brought a claim under Title III of the ADA against ES Defendants.

Title III of the ADA "prohibits discrimination on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, . . . , or operates a place of public accommodation." *Williams v. Barrocas*, No. 26-cv-3204, 2026 WL 1133997, at *3 (S.D.N.Y. Apr. 27, 2026), *reconsideration denied*, No. 26-cv-3204, 2026 WL 1230992 (S.D.N.Y. May 1, 2026).

"[T]he party invoking federal jurisdiction bears the burden of establishing the elements of Article III standing." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022). To establish standing, the plaintiff must show that he (1) suffered an injury in fact that is "concrete, particularized, and actual or imminent," (2) that the injury was "likely caused by the defendant," and (3) that the "injury would likely be redressed by judicial relief." *Id.* A plaintiff that is seeking injunctive relief cannot solely rely on a past injury—rather, they must also establish that they are likely to be harmed again in the future, in a similar way. *Id.* When a plaintiff is seeking injunctive relief in the ADA context, the injury in fact element is satisfied when:

> the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' businesses to plaintiff's home, that plaintiff intended to return to the subject location.

*Id.* (citation modified)

Here, Plaintiffs fail to allege facts that establish standing. Even presuming that Plaintiffs established a disability under the ADA, Plaintiffs do not allege an injury-in-fact. Plaintiffs do not allege that their electricity was actually shut off by ES Defendants, *see* Compl. ¶ 70–72, and essentially argue that the ADA requires ES Defendants to provide

Plaintiffs with cheaper electricity as an "accommodation" for their disability, *see* Compl. ¶ 6.[2] However, the ADA was created to prohibit discrimination based on a disability, and Plaintiffs fail to allege that ES Defendants discriminated against them based on Manigaulte's disability status. *Calcano*, 36 F.4th at 74. Accordingly, ES Defendants' motion to dismiss is granted as to this claim.

### C. <u>Fourteenth Amendment Claim</u>

Plaintiffs brought a claim under the Equal Protection and Due Process Clauses of the Fourteenth Amendment against the State Defendants. Compl. ¶ 112. Plaintiffs argue that the electric rates "implicate the Due Process and Equal Protection Clauses when and if class-based discrimination is at issue." *Id.* ¶ 1. Plaintiff identifies "disability and indigency" as the classes that are being discriminated against, *id.* ¶ 7, and argue that they "represent a *special* class of citizens . . . like prisoners . . . [which require] the state [to] provide or see to it that" they are provided "with health-preserving and life-preserving electric power," ECF No. 83 at 6 (emphasis in original).

"The Court determined that insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Terpening v. McGinty*, No. 121-cv-1215, 2022 WL 2657291, at *5 (N.D.N.Y. Apr. 28, 2022) (citation modified), *report and recommendation adopted*, No. 121-cv-1215, 2022 WL 2115265 (N.D.N.Y. June 13, 2022). "However, if a plaintiff cannot state a Title II claim, the court's sovereign immunity inquiry is at an end." *Id.* (citation modified).

---

[2] The court notes that other courts have concluded that "there is no federally protected right to receive electricity for free or at a reduced rate." *McNeely v. Crosswhite*, No. 2:14-cv-2107, 2014 U.S. Dist. LEXIS 170226, at *8 (N.D. Ala. Nov. 19, 2014).

As established above, Plaintiffs failed to state an ADA claim against State Defendants. *See Fore*, 2015 WL 5722719, at *5. Accordingly, Plaintiffs' Fourteenth Amendment claim fails. *Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 151–52 (2d Cir. 2013) (noting that, when analyzing whether Congress validly abrogated a state's sovereign immunity in the context of a Title II claim, if "plaintiff cannot state a Title II claim," the court need not examine whether the misconduct also violated the Fourteenth Amendment). State Defendants' motion to dismiss is granted as to this claim.

**D. <u>16 U.S.C. § 2625(g) Claim</u>**

Plaintiff invokes 16 U.S.C. § 2625(g), requesting the court enter a "permanent injunction ordering PURA and CL&P to comply" with the statute. Compl. at 6, 34.

Courts have limited jurisdiction under the Public Utilities Regulatory Policies Act ("PURPA"). *Rodriguez-Feliciano v. Puerto Rico Elec. Power Auth.*, 488 F. Supp. 2d 45, 47-48 (D.P.R. 2007). In fact, 16 U.S.C. § 2633 limits federal jurisdiction, except for (1) "[t]he Secretary," who may bring an action to "enforce [their] right to intervene and participate," (2) "any electric utility or electric consumer" who was denied a right to intervene by a state court, has a "right to intervene" under 16 U.S.C. § 2631(a), and (3) where a federal agency made a determination if the person seeking review "intervened or otherwise participated in the original proceeding." 16 U.S.C. §§ 2633(b)(1)–(2), (c)(2).

However, none of these exceptions applies to Plaintiffs. Section 2633(b)(1) applies to actions brought by the Secretary. Plaintiffs are electric consumers, not the Secretary of Energy. Section 2633(b)(2) only applies where a state court denied intervention. Plaintiffs do not assert that they were denied intervention by a state court. Section 2633(c)(2) requires an action by a federal agency. Plaintiffs' allegations do not

concern any federal agencies. Accordingly, as the exceptions are all inapplicable, the court lacks jurisdiction, and Defendants' motions to dismiss are granted as to this claim.

**E. <u>42 U.S.C. § 1983 Claim</u>**

Plaintiffs brought a claim under § 1983 against PURA and "its officials" for money damages. Compl. at 35.

The Eleventh Amendment "bars section 1983 claims against state agencies." *P.C. v. Conn. Dep't of Child. & Fams.*, 662 F. Supp. 2d 218, 226 (D. Conn. 2009). Eleventh Amendment immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Mary Jo C.*, 707 F.3d at 152–53. "Section 1983 does not abrogate state sovereign immunity." *Torres v. Off. of Adult Prob.*, No. 22-cv-00883 (SALM), 2023 WL 319233, at *4 (D. Conn. Jan. 19, 2023).

Here, Plaintiffs' "claims against PURA are foreclosed by the Eleventh Amendment, which bars claims in federal court against a state agency without its consent." *Fore*, 2015 WL 5722719, at *7 (holding that claims against PURA were foreclosed by the Eleventh Amendment). To the extent Plaintiffs brought claims against individual PURA officials, "any claims based on constitutional violations for money damages against Defendants, who are state employees, in their official capacities" are barred by the Eleventh Amendment. *Jones v. Baran*, No. 23-cv-1039 (VDO), 2023 U.S. Dist. LEXIS 206231, at *6 (D. Conn. Nov. 17, 2023) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). Accordingly, any claims against PURA and its officials must be dismissed, as they are barred by the Eleventh Amendment.

In any event, "[n]either the state nor a state agency is a person subject to suit under section 1983." *Robinson v. Quiros*, No. 22-cv-1471 (MPS), 2023 WL 4763223, at *1 (D.

Conn. July 26, 2023) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)). To the extent Plaintiffs brought claims against the individual State Defendants in their official capacity, "neither a State nor its official acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71.

Accordingly, State Defendants' motion to dismiss is granted as to this claim.

### F. State Law Claims

The court, having dismissed all federal causes of action, declines to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *see also Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 123 (2d Cir. 2023) ("after properly granting summary judgment on the federal claims, the District Court had discretion not to exercise supplemental jurisdiction over any remaining state law claims") (citation modified); *Ciliberti v. Int'l Bhd. of Elec. Workers Loc. 3*, No. 8-cv-4262, 2012 WL 2861003, at *13 (E.D.N.Y. July 10, 2012) (declining to exercise supplemental jurisdiction over plaintiff's state law claims, as the court granted defendant's motion for summary judgment as to the only federal claim).

## IV. CONCLUSION

For the reasons discussed herein, the court hereby **GRANTS** Defendants' motions to dismiss **(ECF Nos. 77–78)** as to Plaintiffs' federal claims. The court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and **denies as moot**

Plaintiffs' motion for preliminary injunction **(ECF No. 102)**. The Clerk of Court respectfully is directed to please close this case.

**IT IS SO ORDERED** at Hartford, Connecticut, this 15th day of September, 2026.

*/s/*
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE